1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

ALASKA AIRLINES INC,                          CASE NO. 2:23-cv-01593-JHC

9                                             ORDER RE: CROSS-MOTIONS FOR
                Plaintiff,                    SUMMARY JUDGMENT

10
          v.

11

AIRCRAFT MECHANICS FRATERNAL
12   ASSOCIATION LOCAL 14,

13
                Defendant.
14

15
                              **I**
16                     **INTRODUCTION**

17          This matter comes before the Court on cross-motions for summary judgment by

18   Defendant Aircraft Mechanics Fraternal Association Local 14 (the Union), Dkt. # 27, and

19   Plaintiff Alaska Airlines, Dkt. # 28.  In this case, Alaska Airlines seeks review and vacatur of an

20   award by the Alaska-Aircraft Mechanics Fraternal Association System Board of Adjustment

21   (Board) that requires reinstatement of an Alaska Airlines employee.  Dkt. # 1.  The Court has

22   reviewed the materials filed in support of and in opposition to the motions, the rest of the case

23   file, and the governing law.  Being fully advised and applying the highly deferential standards of

24   review required in this case, the Court GRANTS the Union's motion for summary judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Court confirms the Board's award, grants the Union's request for attorney fees and costs, and REMANDS to the Board the issue whether the employee should be awarded back pay and benefits from the date of the arbitration award.  The Court DENIES Alaska Airlines' motion for summary judgment.

**II**
**BACKGROUND**[1]

A.      Facts

Gregory Chappell was employed by Alaska Airlines as an aircraft maintenance technician (AMT).  Throughout about 22 years of employment as an AMT, Chappell did not have any disciplinary issues.  Because AMTs maintain and repair aircraft, they are categorized as "safety sensitive" employees and are subject to random drug testing under federal law.  Alaska Airlines' policy prohibits a safety sensitive employee from reporting to work with THC (tetrahydrocannabinol, a compound found in marijuana) in their system.  Chappell estimates that he has been randomly drug tested about six to eight times without a positive result, and Alaska Airlines has never required him to undergo drug testing on a reasonable cause basis.

On July 5, 2022, Chappell was selected for a mandatory random drug test that reported a positive result for THC.  Orville Hunt, a Director of Line Maintenance for Alaska Airlines, interviewed Chappell about the positive drug test.  At the interview, Chappell denied using marijuana and speculated that he may have accidentally ingested marijuana at a potluck block party barbecue he had attended a few days before the test.  Chappell recalled that at least 20 people attended the barbecue and that none of the potluck food offerings were labeled or otherwise identified as containing marijuana.  Hunt presented his findings to a "PRM team" that

---

[1] This section relies on the facts set forth in the Board's decision, to which the Court must defer. Dkt. # 26-1 at 1369–75 (the Court cites PDF page numbers if docket page numbers are unavailable); *see infra* Section III.C (standard of review for the Board's factual findings).

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 2

meets to consider disciplinary measures. But Hunt did not share with the PRM team Chappell's speculation about accidentally ingesting marijuana at a barbecue. The PRM team decided that termination was warranted under Alaska Airlines' policy against drug use by safety sensitive employees.

On July 25, 2022, Alaska Airlines issued Chappell a notice of termination. The Union grieved Chappell's termination before the Board, claiming that Alaska Airlines violated the collective bargaining agreement (CBA) by terminating Chappell without "just cause." Dkt. # 26-1 at 1366. Alaska Airlines emphasized before the Board the importance of its "zero-tolerance" policy against drug use in deterring misconduct. *Id.* at 1364–65. The parties stipulated that (1) there was no evidence that Chappell was performing his job in an unsafe manner around the time of his positive drug test; (2) Chappell completed his Substance Abuse Professional (SAP) evaluation and education program satisfactorily; and (3) there was no regulatory bar to his re-employment. *Id.* at 1370–71.

B.      The Board's Decision

On October 2, 2023, the Board sustained the Union's grievance. The Board held that Alaska Airlines' policy of terminating employees who test positive on random drug tests was reasonable. *Id.* at 1371–72. But because the parties had negotiated no agreement regarding a former employee's potential return to work after a positive drug test, the applicable provision of the CBA was Article 16.K, which provides, "No employee will be discharged, suspended or disciplined without just cause." *Id.* at 212, 1372.

In assessing whether Alaska Airlines had "just cause" to terminate Chappell, the Board began by observing among other factors Chappell's lack of prior disciplinary history or positive drug tests throughout about 22 years of employment, his repeated denial of any drug use, his completion of his SAP education program, and his eligibility for re-employment. The Board

explained that these facts supported Chappell's speculation that he had accidentally ingested marijuana at a potluck block party barbecue.  *Id.* at 1372.

The Board then drew a comparison to a prior case involving a different Alaska Airlines AMT who accidentally ingested marijuana but was permitted to return to work.  *Id.* at 1373.  In that prior case, neighbors visiting the AMT's wife brought cookies containing marijuana to the AMT's home.  *Id.*  When the neighbors left, the AMT's wife placed the cookies in a cupboard without labeling them or otherwise informing the AMT that they contained marijuana.  *Id.*  Later that evening, the AMT ate the cookies as a snack and discovered that they contained marijuana when he later spoke with his wife.  *Id.*  The Board explained that in that prior case, the AMT's self-reporting of his marijuana consumption to his manager "played a significant role in [Alaska Airlines'] decision to allow him to return to work."  *Id.*  By contrast, Chappell "could not self-report unintentional ingestion of marijuana because he did not know or have reason to suspect that had even occurred, until he tested positive."[2]  *Id.*  The Board found that because "Article 16.K's just cause provision requires that all pertinent information and mitigating factors be considered before a disciplinary decision is made," the PRM team's decision may have been different had it considered Chappell's speculation about accidentally ingesting marijuana at a barbecue along with Chappell's exemplary employment record.  *Id.* at 1374 (footnote omitted).

The Board concluded that Alaska Airlines did not have "just cause" to terminate Chappell.  *Id.* at 1375.  The Board rescinded Chappell's termination and ordered that Chappell be reinstated subject to the execution of a Last Chance Agreement (LCA) comparable to LCAs that have been issued to other Alaska Airlines employees who were reinstated after a positive drug test.  *Id.*  Alaska Airlines did not reinstate Chappell pursuant to the Board's award.

---

[2] The Board noted that Alaska Airlines did not establish that Chappell would have noticed the effects of marijuana.  *See* Dkt. # 26-1 at 1374 n.3.

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 4

1
2
3
4
5
6
7
8

On October 18, 2023, Alaska Airlines filed a complaint in this Court, petitioning for review and vacatur of the Board's award under the Railway Labor Act (RLA), 45 U.S.C. § 153 First (q). Dkt. # 1 at 4. On December 6, 2023, the Union counterclaimed for enforcement of the Board's award under 45 U.S.C. § 153 First (p) and sought attorney fees. Dkt. # 13 at 5–6. The parties cross-moved for summary judgment. The Union asks the Court to confirm the Board's award, grant attorney fees and costs, and award Chappell back pay and benefits from the date of the arbitration award. Dkt. # 27 at 15. Alaska Airlines asks the Court to vacate the Board's award. Dkt. # 28 at 20.

9

### III
### DISCUSSION

10

A.    Standard of Review

11
12
13
14
15
16
17
18

"The RLA creates a comprehensive framework for resolving labor disputes in the rail and airline industries." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 916 (9th Cir. 2018) (en banc) (quotation marks and citation omitted). In reviewing petitions under the RLA, the Ninth Circuit has drawn from a more general standard of review for labor arbitration disputes.[3] Because arbitration is central to stable collective bargaining relationships, a court's review of an adjustment board's decision under the RLA is "among the narrowest known to the law." *English v. Burlington N. R. Co.*, 18 F.3d 741, 743 (9th Cir. 1994) (quotation marks and citation omitted);

19
20
21
22
23
24

---

[3] In *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 19 v. S. Pac. Transp. Co.*, 626 F.2d 715, 717 (9th Cir. 1980), the Ninth Circuit adopted the Fifth Circuit's standard of review set forth in *Bhd. of R.R. Trainmen v. Cent. of Georgia Ry. Co.*, 415 F.2d 403, 410 (5th Cir. 1969), that relied on legislative history showing that the RLA was amended to bring its standard of review "into line with the existing standard of review applicable to labor arbitration awards." The Fifth Circuit also relied on a case from the Supreme Court's "Steelworkers Trilogy" of labor arbitration cases. *Id.* at 412; *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1207–09 (9th Cir. 1989) (en banc) (summarizing the Steelworkers Trilogy of cases). Courts have drawn from the standard of review discussed in the Steelworkers Trilogy and other labor arbitration cases to review petitions filed under the RLA. *See, e.g.*, *Elam v. Nat'l R.R. Passenger Corp.*, 220 F. Supp. 3d 996, 1001–02 (N.D. Cal. 2016) (citing *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524 (9th Cir. 2016)).

*Union Pac. R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978).  Alaska Airlines invokes only one of the few specific grounds upon which a court may review an adjustment board's decision under the RLA: "failure of the board to conform, or confine itself to matters within its jurisdiction." *English*, 18 F.3d at 743–44; Dkt. # 28 at 12.  An adjustment board "exceeds its jurisdiction if it issues a decision without foundation in reason or fact."  *English*, 18 F.3d at 746.

B.    The Board's Interpretation of "Just Cause"

The Board did not exceed its jurisdiction in interpreting the CBA's "just cause" provision.  A court may set aside an adjustment board's interpretation of a CBA if the adjustment board ignores the "essence" or "plain language" of the CBA to "dispense[] '[its] own brand of industrial justice.'"  *Phx. Newspapers, Inc. v. Phx. Mailers Union Loc. 752, Int'l Bhd. of Teamsters*, 989 F.2d 1077, 1080–81 (9th Cir. 1993) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).  When, as here, a party invokes the "'[their] own brand' or 'draw its essence' exceptions to judicial deference," judicial review of the Board's reasoning is "*extremely* limited."  *Stead Motors of Walnut Creek*, 886 F.2d at 1208 n.8 (quoting *Sheet Metal Workers Int'l Ass'n, Loc. No. 359, AFL-CIO v. Arizona Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988)).  Under this extremely limited review, a court can vacate an adjustment board's award when it "actually violates the law or any explicit, well-defined and dominant public policy."  *Arizona Mech. & Stainless, Inc.*, 863 F.2d at 653.  Without any clear violation of the law, a court must defer to an adjustment board's interpretation of a CBA even if the court is convinced that the adjustment board "committed serious error."  *Id.* (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

The Board did not clearly violate the law.  Alaska Airlines cites no provision of the CBA that limits the Board's authority to rely on the "just cause" provision.  *Cf. Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Loc. 261*, 950 F.2d 95, 100 (2d Cir. 1991)

(affirming vacatur of an adjustment board's decision because the board did not rely on a "just cause" provision or other similarly "broad, contractual language" and because other provisions of the CBA limited the board's authority).  And it is established that "an arbitrator [may] apply due process notions to just cause" consistent with a CBA.  *Federated Dep't Stores v. United Food & Com. Workers Union, Loc. 1442*, 901 F.2d 1494, 1497 (9th Cir. 1990).

Alaska Airlines' core contention is that the Board interpreted "just cause" too broadly. But the parties bargained for the adjustment board—not a court or either of the parties—to interpret "just cause."  *See Stead Motors of Walnut Creek*, 886 F.2d at 1216.  The Court must defer to the Board's interpretation of the CBA if the Board "is even arguably construing or applying the contract."  *See Misco, Inc.*, 484 U.S. at 38.  Adjustment boards have interpreted "just cause" to encompass both a procedural consideration of whether an employee is provided "an opportunity to tell his side of the story prior to termination," *Federated Dep't Stores*, 901 F.2d at 1497, and a substantive consideration of whether termination is an appropriate remedy. *See Stead Motors of Walnut Creek*, 886 F.2d at 1202–03, 1216–17.

To be sure, it is arguable here that by omitting a possible explanation for Chappell's positive drug test, Hunt deprived Chappell of a full opportunity to tell his side of the story. Alaska Airlines says that because the PRM team knew that Chappell denied using marijuana, an explanation of how he might have accidentally ingested marijuana is immaterial.  Dkt. # 28 at 18–19 n.5.  But the case of the AMT who self-disclosed that he accidentally ate cookies containing marijuana suggests that an employee's providing a more detailed narrative, rather than a naked denial of marijuana use, can result in the employee being permitted to return to work.  And given Chappell's lack of prior disciplinary history and the treatment of arguably similarly situated employees, it is possible that termination was not justified.  *See Stead Motors of Walnut Creek*, 886 F.2d at 1202–03 (reversing vacatur of an adjustment board's decision to

reinstate with suspension an employee who failed to properly tighten the lug bolts on the wheels of a car that he serviced); *see also Illinois Cent. R.R. Co. v. Bhd. of Locomotive Engineers & Trainmen*, 505 F. Supp. 3d 626, 633 (E.D. La. 2020).  The Board's comparison of Chappell's unique circumstances to another AMT's case and its express disclaimer that nothing in its decision should be construed to suggest that Alaska Airlines should relax its safety standards show that the tribunal brought its "informed judgment to bear in order to reach a fair solution of a problem." *Enter. Wheel & Car Corp.*, 363 U.S. at 597.  To the extent it is ambiguous whether the Board relied on the procedural or substantive considerations of "just cause," such ambiguity "is not a reason for refusing to enforce the award." *Id.* at 598.

C.      The Board's Factual Findings

        The Board did not exceed its jurisdiction by basing its decision on improper factual findings.  An adjustment board has no obligation to make extensive findings of fact.  *Sw. Reg'l Council of Carpenters*, 823 F.3d at 533.  To the extent an adjustment board makes findings of fact, the scope of review of an adjustment board's decision "is much narrower than the 'substantial evidence' test," such that an award is enforceable if the board's position can "be considered in any way rational." *Bhd. of R.R. Trainmen*, 415 F.2d at 411–12; *accord Int'l Ass'n of Machinists*, 626 F.2d at 717.  Thus, a court cannot vacate an award even if it is based on "improvident, even silly, factfinding." *Sw. Reg'l Council of Carpenters*, 823 F.3d at 533 (quoting *Misco, Inc.*, 484 U.S. at 39).  To vacate an adjustment board's award, a court must conclude that the board's reasoning was "*wholly* without foundation in . . . fact." *English*, 18 F.3d at 746 (emphasis added).

        Alaska Airlines contests the Board's reliance on two factual findings: (1) that Chappell speculated in his interview with Hunt that he might have accidentally ingested marijuana at a potluck block party barbecue; and (2) that had Hunt relayed Chappell's speculation about the

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 8

barbecue to the PRM team, the PRM team might not have decided to terminate Chappell.  Dkt. # 28 at 13–14, 19.

      1.     Chappell's Speculation About Accidentally Ingesting Marijuana

Chappell's speculation that he might have accidentally ingested marijuana at a potluck block party barbecue is supported by the record.  Alaska Airlines not only previously conceded that Chappell had so speculated, but also used such speculation in support of its position before the Board.  Alaska Airlines asserted, "Rather than admit to his misconduct, [Chappell] concocted an implausible story that he attended a block party with 20-30 people where he may have unknowingly ingested marijuana at a table containing 'sweets.'"  Dkt. # 26-1 at 1365.  Alaska Airlines contended that Chappell's termination was appropriate because his "bizarre speculation" that he might have accidentally ingested marijuana at a potluck block party barbecue was evidence of his "continued refusal to accept responsibility for his actions."  *Id.*  Alaska Airlines' prior position before the Board shows that there is some foundation in fact for Chappell's speculation about accidentally ingesting marijuana at a barbecue.  Moreover, the Court declines to entertain Alaska Airlines' about-face in this proceeding under the doctrine of judicial estoppel because the Board adopted Alaska Airlines' premise that Chappell speculated about accidentally ingesting marijuana at a barbecue.  *See Morris v. California*, 966 F.2d 448, 452 (9th Cir. 1991) ("As a general principle, the doctrine of judicial estoppel bars a party from taking inconsistent positions in the same litigation.").

      2.     Possibility that the PRM Team's Decision Could Have Been Different

Alaska Airlines says that the Board erred by finding that the PRM team's decision could have been different had Hunt told the PRM team about Chappell's speculation that he might have accidentally ingested marijuana at a potluck block party barbecue.  Alaska Airlines relies on an excerpt from the testimony of Sonia Alvarado, a Managing Director of Labor Relations at

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 9

1    Alaska Airlines involved in Chappell's disciplinary case.  When asked whether the result in

2    Chappell's case might have been different had he established accidental ingestion of marijuana,

3    Alvarado responded that "it wouldn't change the result."  Dkt. # 26-1 at 78.

4          But what the PRM team would have decided based on its own interpretation of "just

5    cause" is irrelevant because it is the Board—not the PRM team—that interprets the CBA.  *See*

6    *Elam*, 220 F. Supp. 3d at 1002.  Alvarado's testimony as to what was dispositive in the PRM

7    team's decision to terminate Chappell is based on an interpretation of "just cause" that the Board

8    rejected after considering Alvarado's full testimony.  Alvarado was later asked whether knowing

9    that "an employee came forward voluntarily and self-disclosed an accidental ingestion event"

10   would "change the calculus."  Dkt. # 26-1 at 78.  Alvarado responded that "[i]t would" because

11   then the case would be treated like a "substance abuse assistance problem" rather than a

12   "disciplinary matter," and described the case of the AMT who self-disclosed that he accidentally

13   ate cookies containing marijuana.  *Id.* at 78–79.  In its decision, the Board observed that there

14   was tension between Chappell's case and the other AMT's case because whether an employee

15   can self-disclose accidental ingestion of marijuana depends on circumstances outside the

16   employee's control.  *Id.* at 1373.  Based on this tension, the Board found that had the PRM team

17   construed the "just cause" provision to treat Chappell more generously because he did not know

18   precisely how he might have accidentally ingested marijuana, the PRM team could have reached

19   a different result.[4]

20

21

22   _____

23        [4] Similarly, it was not, as Alaska Airlines contends, "irrational" for the Board to find that the
     PRM team could have reached a different result and also find that Chappell "was unable to conclusively
     establish that he had unintentionally consumed marijuana."  Dkt. # 28 at 20.  That Chappell had to
     conclusively establish accidental consumption of marijuana for the PRM team to have reached a different
24   result is based on Alaska Airlines' interpretation of "just cause," not the Board's.

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Board's finding that the PRM team's decision could have been different had Hunt told the team about Chappell's speculation regarding the barbecue properly rests on the Board's interpretation of "just cause."  Because the Board's award is "rationally inferable" from the purpose of the "just cause" provision, it merits deference.  *English*, 18 F.3d at 746 (quoting *Int'l Ass'n of Machinists*, 626 F.2d at 717).  And insofar as Alaska Airlines contests the Board's reinstatement of Chappell, Alaska Airlines cites no authority suggesting that the Board's remedy was unfair, much less warranting judicial intrusion in an area over which the Board has special expertise.  *See Enter. Wheel & Car Corp.*, 363 U.S. at 597.

D.     Attorney Fees and Costs, Back Pay and Benefits

The Court grants the Union's request for attorney fees and costs.  The Union brought its counterclaim seeking to confirm the Board's award under 45 U.S.C. § 153.  Subsection (p) of that statute states that "the petitioner shall not be liable for costs in the district court," and that "[i]f the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit."  Dkt. # 13 at 6; *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 551 n.17 (9th Cir. 1992) (recognizing that subsection (p) "explicitly provides for an award of attorneys fees"); *Burlington N. Inc. v. Am. Ry. Sup'rs Ass'n*, 527 F.2d 216, 222 (7th Cir. 1975) (subsection (p) applies "without regard to whether the request for court-ordered compliance is made by way of a separate action or by means of a counterclaim to a petition for review"); *see also Silva v. S. Pac. Transp. Co. (W. Lines)*, 638 F. Supp. 15, 19 (N.D. Cal. 1985).  The parties rely on cases holding that a district court has discretion to award attorney fees and costs if "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Phx. Newspapers, Inc.*, 989 F.2d at 1084 (quotation marks and citation omitted), but these cases do not involve the RLA.  Dkt. ## 27 at

14–15; 30 at 9–10.  Subsection (p)'s language as to attorney fees and costs is mandatory and applicable here, where the Union is the prevailing party.

The Union also requests that Chappell be awarded back pay and benefits from the date of the arbitration award.  Dkt. # 27 at 15.  Because the Board did not account for the possibility that Alaska Airlines' noncompliance with the award would delay Chappell's reinstatement, the Court remands to the Board the issue whether Chappell should be awarded back pay and benefits from the date of the arbitration award.  *See Illinois Cent. R.R. Co.*, 505 F. Supp. 3d at 634–35.

**IV**
**CONCLUSION**

For the foregoing reasons, the Court GRANTS the Union's motion for summary judgment.  The Court confirms the Board's award and grants the Union's request for attorney fees and costs.  The Union may file a motion for attorney fees no later than 14 days after the entry of judgment.  *See* LCR 54(d)(5) (citing Fed R. Civ. P. 54(d)).  The Court REMANDS to the Board the issue of whether Chappell should be awarded back pay and benefits from the date of the arbitration award.  The Court DENIES Alaska Airlines' motion for summary judgment.

Dated this 15th day of October, 2024.

John H. Chun
United States District Judge

ORDER RE: CROSS-MOTIONS FOR SUMMARY
JUDGMENT - 12